**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-CR-39 CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| DAVID POITIER BELTON, DEREK MICHAEL MIMS, ELMER MIMS, and ANTON TARRICE WHITNEY, JR., | |
| Defendants. | |

_____

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................ 3

II. STANDARD OF REVIEW................................................................ 3

III. FACTUAL BACKGROUND ........................................................... 4

IV. DISCUSSION................................................................................. 4

    A. Probable Cause ...................................................................... 5

        1. Defendant Belton........................................................... 7

            a. Factual Findings ................................................. 7

            b. Legal Objections................................................. 8

                i. May 21, 2021 Affidavit ................................. 8

                ii. Remaining Affidavits ....................................10

2.      Defendant D. Mims ..................................................13

3.      Defendant Whitney ..................................................15

     a.      Factual Findings .................................................15

     b.      Legal Findings ..................................................16

B.      Necessity .................................................................19

C.      Good-Faith Exception ..................................................23

VI.   CONCLUSION ...............................................................24

## I. INTRODUCTION

This matter is before the Court on defendants' motions to suppress wiretap evidence. (Docs. 241, 245, 256, 259). On October 20, 2022, defendant Whitney filed a motion to suppress. (Doc. 241). On October 21, 2022, defendant Elmer Mims ("E. Mims") filed a motion to suppress. (Doc. 245). On October 28, 2022, defendants Belton and Derek Mims ("D. Mims") also filed motions to suppress. (Docs. 256 & 259). The government filed a timely resistance. (Doc. 269). United States Magistrate Judge Mark A. Roberts recommended that this Court deny defendants' motions. (Doc. 355). Defendants timely filed objections to Judge Roberts' Report and Recommendation ("R&R"). (Docs. 361, 364, 365, 366).

For the following reasons, the Court **denies** defendants' motions to suppress wiretap evidence.

## II. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate

judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

### III. FACTUAL BACKGROUND

After reviewing the government's wiretap applications, including affidavits authored by Officer Brian Furman, (Docs. 278, 278-1–4, 282, 282-1), the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the R&R as to the February 22, 2021 Affidavit, March 25, 2021 Affidavit, May 21, 2021 Affidavit, November 29, 2021 Affidavit, December 21, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit, (Doc. 355, at 5-40). The Court thus adopts Judge Roberts' summary of the facts here, unless stated otherwise. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

### IV. DISCUSSION

Title III of The Omnibus Crime Control and Safe Streets Act of 1968 ("Wiretap Act"), codified at Title 18, United States Code, Sections 2510–22, provides that the government cannot intercept wire, oral, or electronic communications absent proper authorization. A wiretap is only properly authorized when the government shows it is (1) reasonable—that is, based on probable cause—and (2) necessary. *United States v. Thompson*, 690 F.3d 977, 984-986 (8th Cir. 2012). Even when a wiretap is authorized, however, "[a]ny aggrieved person" can move to suppress intercepted communications and "any evidence derived therefrom" if "the communication was unlawfully intercepted;" "the order of authorization or approval under which it was intercepted is insufficient on its face;" or "the interception was not made in conformity with the order of authorization." 18 U.S.C. § 2518(10)(a). An "aggrieved person" is "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11).

4

Defendants are all aggrieved persons under the Wiretap Act. The Court now addresses their arguments.

### A. *Probable Cause*

Defendants Belton, D. Mims, and Whitney object to Judge Roberts' finding of probable cause to issue the wiretap orders. (Docs. 361, at 4-5; 365, at 2-10; 366, at 1-3).

"[The Wiretap Act's] probable-cause requirement is coextensive with the Fourth Amendment's probable-cause requirement." *United States v. Merrett*, 8 F.4th 743, 750 (8th Cir. 2021). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

An application for authority to conduct a wiretap "must include facts establishing probable cause to believe: (1) that an individual is committing, has committed, or is about to commit a particular offense, 18 U.S.C. § 2518(3)(a); (2) that communications relevant to that offense will be intercepted through the wiretap, *id*. § 2518(3)(b); and (3) that the facilities from which communications are to be intercepted are being used in connection with the commission of the offense, *id*. § 2518(3)(d)." *United States v. Gruber*, 994 F. Supp. 1026, 1041 (N.D. Iowa 1998). When the judge relies solely on an affidavit, only the information within the four corners of the affidavit can be considered. *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (quoting *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir. 1982)). Evidence derived from an invalid wiretap may not be considered in determining probable cause. *See United States v. Hernandez Leon*, 379 F.3d 1024, 1027 (8th Cir. 2004) ("The sufficiency of a warrant affidavit which contains information from an unlawful search is evaluated after deleting that information.").

As with any search, in showing the basis for a wiretap under the totality of the

circumstances, law enforcement officers can "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (analyzing investigatory traffic stop under reasonable-suspicion standard); *accord Ornelas v. United States*, 517 U.S. 690, 699 (providing that appellate review should "give due weight to inferences drawn from those facts by resident judges and local law enforcement officers"). An officer's experience and training are useful in interpreting coded language. *See United States v. Bellomo*, 954 F. Supp. 630, 638 n.3 (S.D.N.Y. 1993). Accordingly, courts can rely on an officer's "expert opinion as to evidence in a wiretap application" when the officer "provide[s] credible interpretations of the content of these conversations." *United States v. Bellomo*, 954 F. Supp. 630, 638 n.3 (S.D.N.Y. 1993); *see also United States v. Smith*, Case No. 19-00315-01-CR-W-DGK, 2022 WL 3572720, at *3-*4 (W.D. Mo. July 28, 2022) (finding as facts officer's training and experience on coded language in drug trade and officer's testimony to the meaning of certain coded language); *cf. United States v. Delpit*, 94 F.3d 1134, 1145 (8th Cir. 1996) (describing officer testifying at trial as an expert assisting the court and jury by identifying "the meaning of jargon and codewords").

An officer's conclusory statements, however, cannot support a finding of probable cause. *See Illinois v. Gates*, 462 U.S. 213, 239 (1983) (describing "mere conclusory statements" such as "affiants have received reliable information from a credible person and believe [that the suspect stored drugs in the home]" and "[the affiant] has cause to suspect and does believe that [the suspect committed a crime]," in "'bare bones' affidavits"). Affidavits based only on suspicion and belief cannot show probable cause. *Id*. Still, absent such defects, probable cause is a "flexible, common-sense standard." *Id*. This is because "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical

considerations of everyday life on which reasonable and prudent [people], not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar v. United States*, 338 U.S. 160, 175 (1949). Accordingly, "room must be allowed for some mistakes" by officers, so long as the mistakes are those of reasonable people, "acting on facts leading sensibly to their conclusions of probability." *Id*.

For the following reasons, the Court agrees with Judge Roberts that the Affidavits showed probable cause and adopts his findings here.

### 1. Defendant Belton

Belton objects to Judge Roberts' finding of probable cause as to Belton to issue the wiretap orders. (Doc. 361, at 4-5). For the following reasons, the Court overrules Belton's objections.

### a. Factual Findings

Before objecting to Judge Roberts' legal findings, Belton objects to Judge Roberts' factual findings in the R&R, arguing that in finding probable cause, Judge Roberts inappropriately relied on conclusory statements. (*Id.*, at 2-4). Belton argues the R&R is "tainted by their inclusion," even though Judge Roberts "certainly includes a great deal more in his recitation of facts." (*Id.*, at 4). The facts Belton cites are statements Officer Furman made in the Affidavits as to his beliefs about Belton's role in the organization and the roles of others based on Officer Furman's training and experience. (*Id.*, at 2-3). Looking at these statements alone, these appear unsupported by facts. But the statements were made in affidavits with facts that, as the Court has found, support Officer Furman's opinions. *See Gladney*, 48 F.3d at 312. They were not presented on "suspicion or belief" alone. *See Gates*, 462 U.S. at 239. Thus, the Court does not find Judge Roberts inappropriately relied on conclusory statements or that Judge Roberts' factual findings are tainted by their inclusion.

### b. *Legal Objections*

Belton's legal objections focus mainly on the May 21, 2021 Affidavit, before objecting to the remaining affidavits more generally. For reasons discussed below, the Court finds it appropriate, as Judge Roberts did, to first address the May 21, 2021 Affidavit and then address the remaining affidavits.

### i. *May 21, 2021 Affidavit*

Belton first objects to Judge Roberts' finding of probable cause as to Belton in the May 21, 2021 Affidavit. (Doc. 361, at 4-5 (discussing Doc. 355, at 49-51)). Judge Roberts based his finding on the following facts which this Court has already adopted. (Doc. 355, at 49-51).

On January 7, 2021, investigators interviewed Nicholas Griffin post-*Miranda*. In that interview, Griffin identified Belton by his first name "David" and his street name, "Blood," as his source for methamphetamine. Griffin identified a photo of Belton as David/"Blood." Griffin described the weights of methamphetamine he had purchased from Belton. Griffin told investigators Belton distributed narcotics in Cedar Rapids, but got the drugs from California, where his family lived. Griffin identified a phone number as belonging to Belton and said he used that number to purchase drugs from Belton. Toll analysis of TT7 confirmed 54 contacts between Belton and Griffin in the previous month. Griffin confirmed the information in a proffer interview on March 3, 2021.

Investigators also intercepted calls on TT1 between Brian Dennis and another person, in which the parties discussed Belton (aka "Blood") as their drug source, and between Dennis and D. Mims, in which the parties discussed D. Mims and Belton traveling to the source location to acquire more drugs.

In investigators' March 29, 2021 interview with Bates, Bates said he purchased methamphetamine from "Blood" and, before being on probation, purchased pound quantities for $3,000 a pound once or twice a week. Like Griffin, Bates told investigators

Belton was from California and was not always in Cedar Rapids.

Investigators also linked Belton to Whitney at this time. A pen register of TT7 showed eight contacts between the two on April 11, 2021. Several calls between Whitney and Rogers, and Whitney and Belton, in which the parties discussed collecting money were intercepted between April 16, 2021, and May 1, 2021. Officer Furman interpreted these calls as supporting that Belton supplied narcotics and Whitney collected drug debts for Belton's narcotics. A toll analysis of TT7 from April 11, 2021, to May 11, 2021, also showed 20 contacts with Whitney and six contacts with Rogers.

The Court finds the May 21, 2021 Affidavit establishes probable cause based on these facts and the totality of the circumstances, because the Affidavit establishes a fair probability that Belton was committing the Target Offenses, using TT7 in furtherance of the Target Offenses, and that a wiretap of TT7 would reveal communications relevant to the Target Offenses. 18 U.S.C. 2518(3). Indeed, the evidence far exceeds the showing necessary to establish probable cause.

Belton urges the Court against such a finding, highlighting issues with various facts. The Court finds Belton's arguments unpersuasive.

First, Belton takes issue with reliance on Griffin's interviews. He argues a wiretap of TT7 was inappropriate because the number Griffin used to contact Belton was not TT7. (Doc. 361, at 4). But investigators realized Belton had stopped using the number Griffin shared and they used IMEI and common call analysis to confirm Belton's new phone number. (Doc. 278, at 11). Further, probable cause is determined based on the totality of the circumstances. Information from Griffin's interview might support a wiretap on Belton's old number. But Griffin's identification of Belton and information about Belton's drug dealing also aligns with evidence supporting a wiretap of TT7 and thus, considering all the evidence before the Court, also supports a finding of probable cause as to TT7. Belton also argues Griffin's testimony should receive little weight

because Griffin would say anything to get out of trouble. But Griffin's testimony was corroborated by cell records and aligns with Bates' testimony.

Second, Belton argues that Officer Furman's interpretation of conversations in the Affidavit is inappropriate, and the Court should not rely on it. (Doc. 361, at 5). The Court does not agree. A court properly relies on an officer's interpretation of jargon or codewords when the officer has extensive experience and training in investigating the relevant behavior. *See Arvizu*, 534 U.S. at 273; *Bellomo*, 954 F. Supp. at 638 n.3; *Smith*, 2022 WL 3572720, at *3-*4; *Delpit*, 94 F.3d at 1145. Here, it is undisputed that Officer Furman has been a Narcotics Investigator since 2009, participated in over 100 investigations relating to the possession and distribution of controlled substances since that time, and generally has extensive training and experience investigating narcotics organizations. (*See* Docs. 355, at 5, n.3; *see also, e.g.*, 278, at 2). Thus, the Court finds relying on Officer Furman's interpretations of codewords in its determination of probable cause is appropriate here.

Further, the Court does not find that reliance on Officer Furman's interpretations supplants its role in finding probable cause, as Belton argues. (Doc. 361, at 5). The Court is not substituting Officer Furman's findings for its own; instead, the Court views Officer Furman's interpretations in the totality of the circumstances evidenced in the Affidavit, while taking into account Officer Furman's expertise. Having engaged in this analysis, the Court found probable cause exists.

For these reasons, the Court overrules Belton's objections as to probable cause in the May 21, 2021 Affidavit.

## ii. Remaining Affidavits

In a more conclusory fashion, Belton objects to Judge Roberts' finding of probable cause as to Belton in the November 29, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit. (Doc. 361, at 5). Judge Roberts based his finding on the

following facts which this Court has already adopted. (Doc. 355, at 51-55).

Much of the information in the November 29, 2021 Affidavit is identical or nearly identical to the information in the May 21, 2021 Affidavit, particularly as it pertains to Griffin's and Bates' interviews, communications between Belton and Rogers, and communications between Dennis and D. Mims. The November 29, 2021 Affidavit also had new information derived from communications intercepted over TT7 under the May 21, 2021 wiretap order. This information included: a May 21, 2021 call between Belton and D. Mims discussing the location of drug proceeds and Belton needing some of it to pay others, including his mother; a May 21, 2021 call between Belton and Whitney discussing the location of narcotics; a May 24, 2021 call between Belton and D. Mims discussing someone owing Belton money for drugs; a May 24, 2021 call between Belton and Whitney discussing the price of drugs increasing from $4,000 to $5,000; a June 14, 2021 call between Belton and Papa regarding Belton's drug supply and whether someone would travel to California to obtain more, and; text messages between Belton and Papa where Papa gave Belton his new number. All calls and texts took place over TT7.

The Court finds probable cause to continue the wiretap of Belton's phone, TT7, in the November 29, 2021 Affidavit, because the Affidavit establishes a fair probability that Belton was committing the Target Offenses, using TT7 in furtherance of the Target Offenses, and that a wiretap of TT7 would reveal communications relevant to the Target Offenses. 18 U.S.C. 2518(3).

In December 2021, investigators learned that Belton had begun to use a new phone—TT13; the January 13, 2022 application sought a wiretap for TT13, with the January 13, 2022 Affidavit supporting it. (Doc. 278-3, at 19). Some of the content is repeated from prior affidavits. New information included: December 9, 2021 text messages over TT7 about selling pounds of methamphetamine; a December 9, 2021 call over TT7 about collecting $25,000 in drug proceeds; a December 26, 2021 call between

11

D. Mims and Belton over TT10—the phone used by D. Mims—with Belton receiving the call on TT13, in which the parties discussed purchasing firearms.

The Court finds probable cause to begin a wiretap on Belton's new phone, TT13, in the January 13, 2022 Affidavit, because the Affidavit establishes a fair probability that Belton was committing the Target Offenses, using TT13 in furtherance of the Target Offenses, and that a wiretap of TT13 would reveal communications relevant to the Target Offenses. 18 U.S.C. 2518(3).

Finally, the February 11, 2022 Affidavit, included the following new information supporting the continued wiretap of TT13. On February 4, 2022, Belton and Papa had a call over TT13 in which the parties discussed their next drug purchase in California. On February 6, 2022 text messages over TT13 revealed Belton talking to an unidentified male about acquiring drugs. On the same day, Whitney sent a text over TT13, providing D. Mims' new phone number, TT15, to Belton. Just four minutes later, Belton used TT13 to call D. Mims at TT15. On February 3, 2022, and February 10, 2022, Belton and Papa sent text messages over TT13 discussing an upcoming drug purchase in California.

The Court finds probable cause to continue the wiretap of Belton's phone, TT13, in the February 11, 2022 Affidavit, because the Affidavit establishes a fair probability that Belton was committing the Target Offenses, using TT13 in furtherance of the Target Offenses, and that a wiretap of TT13 would reveal communications relevant to the Target Offenses. 18 U.S.C. 2518(3).

Belton's objections as to probable cause in the November 29, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit repeat his argument that the Court should not rely on Officer Furman's interpretations. (Doc. 361, at 5). Having already found reliance on Officer Furman's interpretations appropriate, the Court overrules Belton's objections as to probable cause in the November 29, 2021 Affidavit,

January 13, 2022 Affidavit, and February 11, 2022 Affidavit.

In sum, the Court **overrules** Belton's objections to Judge Roberts' finding of probable cause to issue the wiretap orders. (Doc. 361, at 4-5).

### 2. *Defendant D. Mims*

D. Mims objects to Judge Roberts' finding of probable cause as to D. Mims in the February 22, 2021 Affidavit and March 25, 2021 Affidavit.[1] (Doc. 366, at 1-3 (discussing Doc. 355, at 56-58)).

As a preliminary note, the Court agrees with Judge Roberts' assessment that D. Mims' argument as to probable cause for the February 22, 2021 Affidavit does not engage with the probable cause standard and is more a general complaint that D. Mims came to investigators' attention because of the wiretap based on the February 22, 2021 Affidavit. (Docs. 259-1, at 8 ("When the Drug Task Force began its investigation into other individuals, Derek was not on anyone's radar scope. [D. Mims] first came to the attention of investigators when he was overheard on a wiretap of Brian Dennis's cell phone."), Doc. 355, at 56 ("This all may be true, but none of this casts doubt on the probable cause

---

[1] Judge Roberts interpreted D. Mims' probable cause argument as focusing on the February 22, 2021 Affidavit and the March 25, 2021 Affidavit. (Doc. 355, at 56 (citing Doc. 259-1, at 8-9)). The Court agrees this was the thrust of D. Mims' motion to suppress. (*See* Doc. 259-1, at 9 ("The evidence obtained from the February 13, 2021 and March 25, 2021 wiretaps must be suppressed.")). The Court notes there is no February 13, 2021 affidavit and interprets D. Mims' mention of February 13 as a typographical error. D. Mims also argues any subsequent wiretaps should be suppressed as to him "to the extent such wiretaps were based on the earlier wiretaps." (*Id.*). In his objections to the R&R, D. Mims now appears to object to Judge Roberts' factual findings regarding probable cause in subsequent wiretaps. (Doc. 366, at 2-3). The Court cannot and does not reach these new arguments. If it could reach these arguments, the Court would overrule D. Mims' objections as to these subsequent wiretaps. D. Mims' arguments go to the weight of the evidence and whether he believes Officer Furman and his opinions and interpretations are credible. As discussed, probable cause requires only "a fair probability that contraband or evidence of a crime would be found in a particular place." *Fladten*, 230 F.3d at 1085 (citing *Gates*, 462 U.S. at 236). Here, the Court would find the other affidavits show a fair probability that evidence of the conspiracy would be found on D. Mims' various cellphones; thus, the Court would find probable cause.

to order a wiretap of TT1, Dennis's phone."). Thus, the Court need not engage in analysis of the February 22, 2021 Affidavit.

The March 25, 2021 Affidavit, however, sought a wiretap of TT4—a phone belonging to D. Mims—in addition to the continuation of TT1—Dennis' phone. But, as Judge Roberts noted, on April 7, 2021, lack of activity on TT4 led investigators to request that interception software be uninstalled and cease interceptions. (21-wt-1-CJW, Doc. 12, at 4, 15-17). Because no criminal evidence was obtained, there is nothing to suppress.

It is possible that in his objections, D. Mims intends to renew the argument from his motion to suppress that the subsequent affidavits contain tainted evidence. Out of an abundance of caution, the Court addresses these arguments and finds no tainted evidence. Again, D. Mims does not argue that probable cause does not exist for the February 22, 2021 Affidavit as to TT1, Dennis' phone, which resulted in investigators intercepting communication with D. Mims. As discussed, the wiretap stemming from the March 25, 2021 Affidavit resulted in no criminal evidence and therefore cannot taint subsequent affidavits. The May 21, 2021 Affidavit and November 29, 2021 Affidavit, related only to TT7, Belton's phone, and, as discussed, there was probable cause to issue those wiretaps. Finally, for the reasons discussed by Judge Roberts in his R&R, (Doc. 355, at 57-58), the December 21, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit establish probable cause as to TT10 and TT15, D. Mims' phones, because the Affidavits establish a fair probability that D. Mims was committing the Target Offenses, using TT10 and TT15 in furtherance of the Target Offenses, and that wiretaps of TT10 and TT15 would reveal communications relevant to the Target Offenses. 18 U.S.C. 2518(3).

D. Mims generally objects to Judge Roberts' findings of probable cause because Judge Roberts relied on certain statements by Officer Furman which D. Mims argues are conclusory, lack sufficient detail, represent opinions and not facts, and fail to constitute

"substantial evidence." (Doc. 366, at 1-3). Though D. Mims selects certain facts with which he takes issue, a determination of probable cause is made considering the Affidavit as a whole. *Gladney*, 48 F.3d at 312. As such, again the Court finds probable cause exists as to each of the Affidavits.

In sum, the Court **overrules** D. Mims' objections to Judge Roberts' finding of probable cause to issue the wiretap orders. (Doc. 366, at 1-3).

### 3.     *Defendant Whitney*

Whitney objects to Judge Roberts' finding of probable cause as to Whitney to issue the January 13, 2022 and February 22, 2022 wiretap orders. (Doc. 365, at 2-10). For the following reasons, the Court overrules Whitney's objections.

### a.     *Factual Findings*

Whitney first objects to Judge Roberts' findings of fact. Specifically, Whitney objects to Judge Roberts' reliance on Officer Furman as a reliable expert on drug jargon despite his mistaken interpretation of "half a jar of pills." (Doc. 365, at 1-2 (citing Docs. 355, at 33; 273, at 20 n.10)). The Court is not persuaded by this arguments. Officer Furman did make a mistake. But perfection is not required for the Court to find an investigator credible for purposes of a probable cause determination. *See Gates*, 462 U.S. at 239; *Brinegar*, 338 U.S. at 175; *Bellomo*, 954 F. Supp. at 638 n.3. Here, it is reasonable that Officer Furman confused "half a jar" as a half-pound of methamphetamine instead of fifty pills of methamphetamine. (Doc. 273, at 20, n.10 (discussing Officer Kelly Meggers' testimony at Bates' and Whitney's detention hearings that "half a jar" meant fifty pills). Further, the intercepted conversation about the "half a jar of pills" was included in the February 11, 2022 Affidavit—not the January 13, 2022 Affidavit—and Whitney bases his objections to the February 11, 2022 Affidavit on his argument that it is tainted by the January 13, 2022 Affidavit. Thus, the effect of this objection is minimal.

Whitney also objects to Judge Roberts' findings regarding the meaning of "bread" and "it" in the context of intercepted conversations. (Doc. 365, at 1-2). Based on the conversations in the January 13, 2022 Affidavit, Whitney urges that "bread" means only money, not drug proceeds, and the pronoun "it" cannot be interpreted to mean drug proceeds, either. Again, the Court is not persuaded. Whitney's argument fails to take into account the context of other conversations between target subjects and interceptees as intercepted by investigators and the investigation and described in the January 13, 2022 Affidavit. It also fails to take into account Officer Furman's qualifications, as stated at the beginning of the Affidavit, which are imputed to all of his statements. It is implied that officer bases all of his opinions and interpretations on his training and experience. And a court properly relies on an officer's interpretation of jargon or codewords when the officer has extensive experience and training in investigating the relevant behavior. *See Arvizu*, 534 U.S. at 273; *Bellomo*, 954 F. Supp. at 638 n.3; *Smith*, 2022 WL 3572720, at *3-*4; *Delpit*, 94 F.3d at 1145.

For these reasons, the Court finds no reason to take issue with Judge Roberts' factual findings and **overrules** Whitney's objections on these grounds.

### b.    *Legal Findings*

Whitney first objects to Judge Roberts' finding of probable cause in the January 13, 2022 Affidavit. (Doc. 365, at 2-10 (discussing Doc. 355, at 58-61)). Judge Roberts based his finding on the facts which this Court has already adopted. (Doc. 355, at 58-59). Specifically, Judge Roberts noted:

> In the January 13, 2022 affidavit, Officer Furman recounted a text exchange between D. Mims and Whitney over TT10, which occurred on December 22, 2021. (Doc. 278-3 at 29.) In the text exchange, Whitney stated, "He gone wait to get more tomorrow still waitin on more bread but got tha rest he owes now tho." (*Id.*) D. Mims responded, "Ight." (*Id.*) Officer Furman interpreted this exchange to mean that Whitney was informing D. Mims an individual for whom Whitney was collecting drug

proceeds was not able to pay at that time but would be able to pay the next day.  (*Id.*)  Officer Furman also interpreted "bread" to mean cash collected.  (*Id.*)  On December 27, 2021, investigators intercepted a call between Whitney and D. Mims over TT10.  (*Id.* at 29-31.)  During the conversation, D. Mims informed Whitney, "I've got to leave tomorrow."  (*Id.*  at 30.)  Whitney responded, "Alright, you'll have it tonight."  (*Id.*)  D. Mims responded, "Alright. I'll come in there and handle some shit."  (*Id.*)  Whitney and D. Mims also discussed what was going on with "Blood," i.e., Belton.  (*Id.*)  Toward the end of the conversation, Whitney told D. Mims, "Alright let me know when you're on your way."  (*Id.*)  Officer Furman interpreted the call to mean that D. Mims was contacting Whitney to verify the collection of drug proceeds.  (*Id.*)  Officer Furman noted that, during the investigation, investigators had developed evidence that Whitney's role in the DTO was collection of money from distributors to be delivered to D. Mims or Belton.  (*Id.* at 31.)  Further, Officer Furman noted that in April 2021, Whitney was intercepted multiple times on TT6, used by Rogers, regarding the collection of money for drugs.  (*Id.*)  Officer Furman interpreted the call to mean that Whitney had money for D. Mims and D. Mims would meet with Whitney later that night to collect the money.  (*Id.*)  Additionally, Whitney's phone, TT14, between December 20, 2021 and January 6, 2021, had 2 calls and 91 texts with Robert Bates, an individual know to have purchased methamphetamine from Belton.  (*Id.* at 38.)

The Court finds probable cause to continue the wiretap of Whitney's phone, TT14, in the January 13, 2022 Affidavit, because the Affidavit establishes a fair probability that Whitney was committing the Target Offenses, using TT14 in furtherance of the Target Offenses, and that a wiretap of TT14 would reveal communications relevant to the Target Offenses.  18 U.S.C. 2518(3).

Whitney's specific objections as to a finding of probable cause in part build on his factual objections, which the Court has already overruled.  Whitney also objects that Judge Roberts relied on conclusory statements, but, as the Court has discussed, the January 13, 2022 Affidavit as to Whitney is not made on "suspicion or belief" alone.  *See Gates*, 462 U.S. at 239.  A consideration of the totality of the circumstances does not

require the affiant or court to make sense of every statement made by a Target Subject or interceptee to draw meaning from a conversation. Similarly, though Whitney suggests that investigators should have surveilled him to confirm he was collecting drug debts, investigators are not required to pursue all investigatory techniques available to them at any given time, fruitful as they may be.

Whitney also minimizes the amount of contact he had with Bates, but it is possible Bates had little reason to interact with Whitney—perhaps he had few drug debts. Continuing the argument, Whitney states that just because a drug user contacted someone does not make the person contacted a drug distributor. This is certainly true.

But the January 13, 2022 Affidavit establishes more than a "mere propinquity" between Whitney and "others independently suspected of criminal activity," *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). For instance, the January 13, 2022 Affidavit establishes December 22, 2021 text messages in which Whitney updated D. Mims about getting money, which Officer Furman interpreted to be drug proceeds. (Doc. 278-3, at 29). On December 23, 2021, D. Mims and Bates discussed over a phone call Bates getting "one" from D. Mims, which Officer Furman believed to refer to a pound of methamphetamine. (*Id.*, at 25-26). The January 13, 2022 Affidavit gives other information supporting Bates' drug use (*Id.*, at 22-23), and D. Mims' distribution (*Id.*, at 27-28, 31-37). On December 27, 2021, on a phone call, D. Mims told Whitney he had to "leave tomorrow" and Whitney promised D. Mims he would "have it tonight." (*Id.*, at 29-30). The January 13, 2022 Affidavit also shows that between December 20, 2021, and December 27, 2021, two calls took place between Whitney's and Bates' phones. (*Id.*, at 38). Viewing this evidence collectively, the January 13, 2022 Affidavit demonstrates a fair probability that D. Mims and Bates exchanged drugs for money, and that Whitney was responsible for getting that money. As such, it establishes a fair probability that Whitney was participating in a drug conspiracy, Whitney was using his phone, TT14, to facilitate his

18

participation, and a wiretap of TT14 would reveal communications relevant to that conspiracy. Thus, the Court overrules Whitney's objections as to the January 13, 2022 Affidavit.

Whitney also objects to Judge Roberts' legal finding of probable cause as to the February 22, 2022 Affidavit, based on the theory that the information learned from the January 13, 2022 wiretap was tainted because the January 13, 2022 Affidavit lacked probable cause. (Doc. 365, at 10). Having found the January 13, 2022 Affidavit shows probable cause exists the Court overrules Whitney's objection on this ground.

In sum, the Court **overrules** Whitney's objections to Judge Roberts' finding of probable cause to issue the wiretap orders. (Doc. 365, at 1-10).

### B.    *Necessity*

Viewed collectively, defendants Belton, D. Mims, E. Mims, and Whitney argue the government's wiretap applications failed to show necessity based on the May 21, 2021 Affidavit, November 29, 2021 Affidavit, December 21, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit. (Doc. 361, at 5 (citing Doc. 256-1); 364, at 2-3; 365, at 11-12; 366, at 3-4). Belton argues that investigators could or should have tried the normal investigative techniques discussed in the May 21, 2021 Affidavit, the November 29, 2021 Affidavit, the January 13, 2022 Affidavit, and the February 11, 2022 Affidavit against Belton instead of wiretapping his phone and continuing to do so. (Doc. 256-1, at 16-25). D. Mims argues that the majority of normal investigative techniques discussed were not specifically attempted as to him. (Doc. 366, at 3-4). Whiney argues similarly based on the January 13, 2022 affidavit and February 11, 2022 affidavit. (Doc. 365, at 11-12). Whitney also argues it was improper for Judge Roberts to rely on Officer Furman's "boilerplate assertions" without establishing a "factual predicate" as to why normal investigative techniques would be unsuccessful. (*Id.*, at 11). Finally, E. Mims argues the investigation "was successfully using a wide

variety of normal investigative techniques" and "would have continued to yield results." (Doc. 364, at 2-3).[2]

The government must show that a wiretap is necessary to the success of its investigation. *United States v. Thompson*, 690 F.3d 977, 986 (8th Cir. 2012). The Wiretap Act requires that officers use normal investigative procedures before applying for a wiretap. *United States v. Thompson*, 690 F.3d 977, 986 (8th Cir. 2012). But the statute does not require that officers first exhaust all possible techniques. *Id.* Instead, officers must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); *see also United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009) (holding the district court did not err where government detailed its use of other investigation techniques and that investigations were substantially limited without a wiretap).

In his R&R, Judge Roberts found Officer Furman's Affidavits showed the requested wiretaps were necessary. Judge Roberts noted that the defendants were being investigated as part of a drug trafficking organization ("DTO") and

> the purpose of the wiretaps was to uncover evidence of the drug conspiracy and identity of coconspirators by gathering evidence related to the Target Offenses, the names, telephone numbers, and residences of associates of the Target Subjects and others unknown, including drug suppliers, transporters, financiers, manufacturers, distributors, and customers, leadership in the DTO, dates, times, and places for commission of the drug

---

[2] In his R&R, Judge Roberts found E. Mims lacked standing because there was no evidence on the record that E. Mims was a party to any intercepted communications over TT7, TT10, and TT13. E. Mims objected, asserting that the government had presented extensive testimony and multiple exhibits about intercepted communications involving E. Mims and TT7, TT10, and TT13. (Doc. 364, at 1). Reviewing the record, the Court finds it supports that the government intercepted communications between E. Mims and other parties over TT7, TT10, and TT13. (*See* Docs. 127, at 10-23; 103-1, 103-2). As such, E. Mims has standing as an aggrieved party. *See* 18 U.S.C. § 2510(11).

trafficking activities, locations and management of the narcotics and proceeds from narcotics sales, the nature, scope, and methods of the DTO, and the existence and location of records related to the distribution of drugs.

(Doc. 355, at 63 (citing Docs. 278 at 5; 278-1 at 4-5; 278-2 at 4-5; 278-3 at 5-6; 278-4 at 5-6)). Reviewing the May 21, 2021 Affidavit, November 29, 2021 Affidavit, December 21, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit, Judge Roberts found each satisfied Section 2518(c)'s necessity requirement based on Officer Furman's assertions about success and limitations of normal investigative techniques and probable cause that defendants were part of the same drug trafficking organization. (*Id.*, at 64-65).

For the following reasons, the Court agrees with Judge Roberts that the Affidavits showed necessity and adopts his findings here.

As a preliminary matter, Belton, D. Mims, and Whitney each argue that necessity should be determined individually as to each target subject. (Docs. 361, at 5 (citing Doc. 256-1, at 19-25); 365, at 11-12; 366, at 3-4). This is not so when the target offense is conspiracy, as it is here. In the Wiretap Act, Congress linked the necessity requirement to the investigation's overarching purpose. 18 U.S.C. § 2518(3)(c). In a conspiracy case, the government seeks to expose a network of criminal behavior. A wiretap may be necessary when normal investigative techniques have proven "insufficient to reveal the full conspiracy or the identity of several key conspirators." *See United States v. Thompson*, 210 F.3d 855, 859 (8th Cir. 2000); *United States v. Davis*, 882 F.2d 1344 (8th Cir. 1989); *United States v. O'Connell*, 841 F.2d 1408, 1414-15 (8th Cir. 1988) (finding "it was nearly impossible for the government to discover the full scope of this drug conspiracy and the identities of participants without the use of wiretaps" and "[a]lthough the government had collected much evidence prior to the wiretap authorization, the magistrate found that this information revealed a large and far-flung

conspiracy . . . which presented more difficult investigative problems than a common, 'small-time' narcotics ring").  Here, the goal of the government's investigation is not simply to catch Belton, D. Mims, or Whitney—or anyone else, for that matter—in criminal behavior.  As described in the Affidavits, the government's goal is much larger: it seeks to uncover the extent of a drug organization of which it believes defendants are a part and locate the source of the drugs.  (Docs. 278 at 5; 278-1 at 4-5; 278-2 at 4-5; 278-3 at 5-6; 278-4 at 5-6).

Here, wiretaps were necessary to achieve that goal.  The Affidavits detail investigators' use or attempted use of confidential sources, controlled purchases, physical surveillance, search warrants, interviews, trash searches, other electronic surveillance (including camera, pen registers, trap devices, and toll analysis), mail cover requests, and financial investigation.  (Docs. 278, at 56-73, 75-80, 82-94; 278-1, at 44-58, 60-68; 278-2, at 37-52, 54-62; 278-3, at 48-65, 67-76; 278-4, at 50-61, 63-70, 72-81).  The Affidavits also explain why undercover agents and grand jury subpoenas would produce limited results at most.  (Docs. 278, at 73-74, 80-82; 278-1, at 51-52, 58-60; 278-2, at 45-46, 52-54; 278-3, at 57-58, 65-67; 278-4, at 61-62, 70-72).  In each case, Officer Furman describes how effective these techniques were and detailed their limitations or potential for danger, in some cases describing limitations in drug conspiracy cases in general and in others describing the specific limitations in this case.  (Docs. 278, at 94; 278-1, at 68-69; 278-2, at 63; 278-3, at 76-77; 278-4 at 82).  Either way is sufficient to show necessity.  *See United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016).

For these reasons, the Court finds the May 21, 2021 Affidavit, November 29, 2021 Affidavit, December 21, 2021 Affidavit, January 13, 2022 Affidavit, and February 11, 2022 Affidavit, satisfy Section 2518(c)'s necessity requirement.  Thus, the Court **overrules** defendants' objections on this ground.

### C.        Good-Faith Exception

Finally, defendants Belton, D. Mims, and Whitney argue the good-faith exception does not apply to the wiretaps here because even though the Court authorized the wiretaps, it would be objectively unreasonable for an officer to rely on the wiretap orders because they were based on affidavits that clearly lacked probable cause. (Docs. 361, at 6; 365, at 12-14; 366, at 4).

When the government obtains a search warrant and abides by its terms, but the warrant is subsequently invalidated, the search might be lawful under the good-faith exception. *United States v. Leon*, 468 U.S. 897, 922 (1984). The test is whether the officer's reliance on the warrant would be objectively reasonable. *Leon*, 468 U.S. at 922; *United States v. Moore*, 41 F.3d 370, 376-77 (8th Cir. 1994) (analyzing good-faith exception under *Leon* in wiretap context); *United States v. Terrell*, No. CR15-3051-MWB, 2016 WL 3920236, at *13 (N.D. Iowa July 18, 2016) (same). If, for instance,[3] the officer knows information in an affidavit was false or an affidavit was "so lacking in indicia or probable cause as to render official belief in its existence entirely unreasonable," then the officer's reliance on the warrant is not objectively reasonable and the good-faith exception cannot apply. *Leon*, 468 U.S. at 922 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring in part)).

In his R&R, Judge Roberts found the good-faith exception applied because, among other reasons, reliance on the wiretap orders was not objectively unreasonable. (Doc. 355, at 65-67 (also discussing other potential reasons the good-faith exception would not apply, under *Puckett*, 466 F.3d at 629 (8th Cir. 2006)).

---

[3] The good-faith exception will also not apply when there is a *Franks* violation, when an issuing judge abandons his or her judicial role, or when the warrant itself is so facially deficient that no officer could reasonably presume it was valid. *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006). Defendants do not allege that any of these reasons apply here, and the Court agrees with Judge Roberts that they do not. (*See* Doc. 355, at 65-67).

The Court agrees. The Court has already found the Affidavits showed probable cause and necessity for the wiretaps. As such, the Court cannot say they were so lacking in probable cause that it was "entirely unreasonable" for officers to rely on wiretap orders issued by this Court. Further, even if probable cause or necessity were absent, the Court cannot say that the Affidavits were lacking such that officers' reliance on the resulting wiretaps would be entirely unreasonable. As evidenced in Judge Roberts' detailed factual findings, as adopted by this Court, the Affidavits here included evidence supporting Officer Furman's interpretations and conclusions. They are far from bare-bones statements relying solely on "suspicion and belief" without supporting evidence. *See Gates*, 462 U.S. at 239. Thus, the Court **overrules** defendants' objections on this ground.

## VI.     CONCLUSION

For the reasons stated above, defendants' objections (Docs. 361, 364, 365, 366) to Judge Roberts' R&R are **overruled**. The Court **adopts** Judge Roberts' R&R (Doc. 355) and **denies** defendants' Motions to Suppress Wiretap Evidence (Docs. 241, 245, 256, 259).

**IT IS SO ORDERED** this 31st day of January, 2023.

_____
C.J. Williams
United States District Judge
Northern District of Iowa